IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SHAKIA TURNER,

    Plaintiff,

v.

OFFICER ANDREW BRUCE and
OFFICER JIM MOROVIC,

    Defendants.

OPINION and ORDER

17-cv-578-wmc

Plaintiff Shakia Turner brings claims against Madison Police Officers Andrew Bruce and Jim Morovic under the Fourth Amendment. A jury trial is set to commence on Monday, February 4, 2019. In advance of the final pretrial conference scheduled for January 25, 2019, the court issues the following opinion and order addressing the parties' motions in limine.

OPINION

I. PLAINTIFF'S OMNIBUS MOTION IN LIMINE (Dkt. #25)

MIL No. 1: Admit the police reports as evidence at trial

Plaintiff seeks an order permitting her to admit as evidence at trial the written police reports relevant to this matter. In particular, she wants to present Officer Bruce's written report describing statements made by Wa Xiong, the person who made the initial police report that a homeless woman had entered his home and taken a necklace. Plaintiff also wants to present statements from the person who ultimately was detained as a result of Xiong's report, Lasandra Sykes. Defendants do not object to admission of Xiong's statements, but object to Sykes's statements on relevance grounds.

Because plaintiff did not file the police reports with her motion, it is difficult for the court to rule on the admissibility of the reports or the particular statements she wishes to introduce. From the parties' vague descriptions of the reports, it appears that some (or statements within some reports) may well be relevant and admissible, while others may not. For example, statements by Xiong to Office Bruce would seem directly relevant to what information he possessed at the time he approached plaintiff. In contrast, Lasandra Sykes's statements appear irrelevant to the issues in this case, in light of the fact that she spoke to officers *after* the incidents at issue in this case had concluded. Nor has plaintiff explained why Sykes's statements to the police would be relevant to the claims in this case. Plaintiff is, therefore, direct to provide the court with hard copies of the actual police reports she seeks to introduce at trial by 4:30 p.m. today, highlighting those statements and other information she believes are relevant to the issues in dispute, with a brief written justification as to why. In the meantime, I will reserve on the admissibility of statements or information in the reports.

This motion will be RESERVED as set forth above pending an adequate proffer and argument at the Final Pretrial Conference.

**MIL No. 2: Exclude evidence or testimony regarding any prior lawsuits involving plaintiff**

This motion will be GRANTED as unopposed.

**MIL No. 3: Preclude evidence of other police contacts plaintiff has had outside the incident in this case**

This motion will be GRANTED as unopposed.

**MIL No. 4: Preclude evidence of plaintiff's prior convictions**

This motion will be GRANTED as unopposed.

**MIL No. 5: Prohibit any witness disclosed as an unretained expert from offering opinions on whether defendants' conduct violated plaintiff's civil rights**

Plaintiff contends that because Officers Bruce and Morovic could not remember any specific training they received on "*Terry*" stops or arrests, no witness should be able to testify regarding the training MPD provides or whether the officers complied with their training or MPD standards. While defendants object to plaintiff's characterization of their deposition testimony, it appears both officers testified at their depositions that they received extensive training, but that they could not recall specific details. Regardless, defendants agree that testimony or evidence as to any training they received, whether adequate or not, and whether their actions were consistent with training, policies or procedures, are ultimately irrelevant to this case. The court agrees. This case does not involve a failure to train claim against the city and does not present complex issues about whether an officer's use of force or other action was consistent with their training or violated contemporary police standards. Therefore, evidence regarding whether Officers Bruce and Morovic received or complied with MPD training or standards is irrelevant.

Accordingly, this motion will be GRANTED.

## II. DEFENDANTS' MOTIONS IN LIMINE

**MIL No. 1: Foreclose questions on the special verdict, as well as argument, testimony, and other evidence, as to excessive force (dkt. #31), and**

**MIL No. 2: Defendants are entitled to qualified immunity (dkt. #32)**

Defendants' motions in limine no. 1 and no. 2 concern the reach of plaintiff's excessive force claim under the Fourth Amendment, and whether defendants are entitled to qualified

immunity as to that claim. Given that these motions are interrelated, the court considers them together.

In her complaint, plaintiff identifies three Fourth Amendment violations: (1) investigatory stop (*Terry* stop) without reasonable suspicion; (2) arrest without probable cause; and (3) excessive force. Through their motions in limine and their proposed jury instructions, defendants seek an order permitting plaintiff to present only the claim challenging defendants' legal basis for conducting an investigatory stop. In particular, defendants argue that the video recording of the incident establishes that this is not an arrest case, and that plaintiff's excessive force claim rises and falls with her *Terry* stop claim. Finally, they argue that they are entitled to qualified immunity on all of plaintiff's claims in light of this tape.

In response, plaintiff argues that defendants forfeited their opportunity to narrow plaintiff's claims by failing to seek summary judgment on any of her claims before trial. Additionally, plaintiff argues that the court should not entertain defendants' arguments before any evidence has been presented. Both are valid points. Still, because defendants included a qualified immunity defense in their answer, defendants did not waive their qualified immunity defense by failing to raise it in a motion for summary judgment. *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008). As for the sufficiency of the evidence, the court has viewed the video footage of the interaction between plaintiff and defendants, which certainly undermines the viability of plaintiff's false arrest claim. Therefore, the court will not reject defendants' arguments out of hand simply because they could, and probably should, have been raised earlier.

The court will turn first to defendants' argument regarding the false arrest claim. Even when viewed most favorably to plaintiff, defendants argue that the video footage does not

support a claim of false arrest because it is clear that plaintiff was never "arrested." After viewing the video footage, the court agrees. Although "no bright line exists to determine when a legitimate *Terry* stop evolves into an illegal arrest," *Smith v. Ball State Univ.*, 295 F.3d 763, 768 (7th Cir. 2002), a stop that is brief, minimally intrusive, and supported by reasonable suspicion, will likely qualify as a *Terry* stop. *United States v. Bullock*, 632 F.3d 1004, 1015 (7th Cir. 2011). In contrast, a stop that is prolonged unnecessarily by the officers or involves the "hallmarks of formal arrest," such as applying handcuffs, drawing weapons, and placing suspects in police vehicles, may either be a reasonable investigatory detention or may be an arrest, depending on the circumstances. *Id. See also Matz v. Klotka*, 769 F.3d 517, 524–25 (7th Cir. 2014) (*Terry stop* "may also become a de facto arrest if the detention continues longer than necessary to accomplish the purpose of the stop or becomes 'unreasonably intrusive.'") (citations omitted).

Notwithstanding plaintiff's contention that her arm was at one point twisted in a painful manner, the video footage establishes that the defendants' detention of plaintiff was brief and minimally intrusive. Indeed, the entire interaction between plaintiff and defendants was five or six minutes long. Although defendants told plaintiff at one point during the interaction that she was being detained and that she could not leave, a brief detention for investigatory purposes, which this plainly was, is the hallmark of a *Terry* stop, not an arrest. *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.*, 542 U.S. 177, 185 (2004) ("[L]aw enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further[,]" including asking "questions concerning a suspect's identity[.]"). Indeed, barring plaintiff proffering some additional evidence at the Final Pretrial Conference, no one ever told

5

her that she was being arrested; she clearly understood that, repeatedly making clear that she was standing her ground and would not cooperate; she was spoken to calmly and respectfully; except for a very brief grabbing of the wrist on her camera hand, she was never even touched; she was certainly not handcuffed or required to lie on the ground; no weapons were drawn; and she was not placed in a squad car, nor transported to another location. *See Matz*, 769 F.3d at 526 (describing "hallmarks of formal arrest"). Finally, defendants expressly told plaintiff she was not being arrested, but that she was being detained so that they could investigate. In light of the video footage of the incident in question, therefore, the court will not permit plaintiff to present a theory of false arrest at trial, absent the proffering of some additional facts and contrary case law at the Final Pretrial Conference.

The next question is a much closer one: whether plaintiff should be permitted to present an excessive force claim at trial. Defendants argue that the jury should be asked only whether defendants had reasonable suspicion sufficient to justify the *Terry* stop, arguing that if they were justified in stopping plaintiff for purposes of an investigatory detention, then the amount of force Officer Bruce used was reasonable as a matter of law. On the other hand, if defendants lacked reasonable suspicion, defendants concede that the amount of force used was unreasonable as a matter of law. Thus, defendants argue, the only question the jury need decide is whether defendants conducted a lawful *Terry* stop. However, the law and facts here are not nearly as simple as defendants suggest.

The video certainly shows, and there appears *no* dispute, that Officer Bruce grabbed plaintiff's arm, whether because he was attempting to prevent her from videotaping the interaction, as plaintiff claims, or was attempting to handcuff her to continue his investigation, as defendant Bruce claims. If the jury finds Bruce's action was motivated to prevent the filming

6

and, as plaintiff further claims, that he grabbed and sufficiently twisted her arm to inflict pain, then a jury might reasonably find that defendant Bruce used excessive force. Moreover, even if it is an open question under the law whether an officer could take a phone out of a person's hand during a *Terry* stop (which is problematic at best), there is no doubt the police may not use excessive force in doing so.

Defendants further argue that "case law in the Seventh Circuit is now clear that handcuffing alone is *per se* reasonable during an investigatory stop supported by reasonable suspicion" (Dfts.' Br., dkt. #31, at 4), essentially contending that whatever Bruce's *subjective* motivation may have been for grabbing and twisting, he had an *objective* right to do so to handcuff her or otherwise physically detain her to conduct an investigation. Regardless, defendants are simply wrong that it is "per se reasonable" for officers to use handcuffs during an investigatory detention.

Instead, the Seventh Circuit has stated that whether the use of force during a stop is reasonable depends on the "totality of the circumstances," and that there are a "limited set of circumstances in which handcuffs are appropriate without converting a *Terry* stop into a full arrest." *Howell v. Smith*, 853 F.3d 892, 898 (7th Cir. 2017). *See also Ramos v. City of Chicago*, 716 F.3d 1013, 1017–18 (7th Cir. 2013) ("[A]lthough we have upheld the use of handcuffs to ensure officer safety in a *Terry* stop of brief duration, without automatically escalating the situation to an arrest, that does not mean that law enforcement has carte blanche to handcuff routinely. The proliferation of cases in this court in which '*Terry*' stops involve handcuffs and ever-increasing wait times in police vehicles is disturbing, and we would caution law enforcement officers that the acceptability of handcuffs in some cases does not signal that the restraint is not a significant consideration in determining the nature of the stop.").

Although there may be an argument that Officer Bruce's use of force was reasonable in light of the totality of the circumstances, defendants have not tried to make that argument. In particular, defendants do not explain why handcuffing plaintiff was necessary in light of the fact that two officers were present, and plaintiff does not appear to have presented any safety risk or attempted to leave. On the contrary, she appears from the tape to have decidedly and intentionally simply been uncooperative. For these reasons, defendants' motion requesting that the jury not be presented with an excessive force question or jury instruction will be denied.

This leaves the question of qualified immunity. On this question, the court agrees with plaintiff that defendants' motion is premature. Until evidence is actually presented at trial, the court cannot determine whether defendants are entitled to qualified immunity, either for Office Bruce's decision to detain plaintiff for an investigatory stop or for his use of force. Indeed, despite defendants' last-minute decision to provide the video tape, this court does not even have a proffer from plaintiff as to what she expects the evidence will show at trial. Having said that, plaintiff will be required to make a proffer as to the basis for proceeding against Officer Morovic, who appears to have arrived late on the scene, seems to have had little time to assess Officer Bruce's decision to detain the plaintiff, and relatively quickly participated in a decision to let her go. Stated another way, it remains uncertain what clearly established constitutional right defendant Morovic even arguably violated during his very brief encounter with the plaintiff on an objective basis.

Accordingly, while defendants' motion relating to qualified immunity will be DENIED without prejudice, defendants may renew their arguments at the Final Pretrial Conference and after plaintiff has presented her evidence at trial.

**MIL No. 3: Preclude argument, testimony or other evidence that plaintiff suffered physical injury or a loss of earning capacity as a result of the incident (dkt. #33)**

Defendants move to preclude plaintiff from presenting any argument, testimony or other evidence that she suffered physical injury or a loss of earning capacity as a result of the incident. Plaintiff has responded that she does not intend to present any such evidence beyond her own testimony that Officer Bruce's use of force caused her pain. Since defendants have identified no valid basis for precluding plaintiff from testifying as to her subjective experience of her pain (and do not even appear to be arguing that she be precluded from doing so), defendants' motion will be GRANTED, with the exception that plaintiff may testify as to the pain she experienced from Bruce's use of force.

**MIL No. 4: Preclude questioning, testimony or other evidence that plaintiff received a citation or that the citation was dismissed (dkt. #35)**

The day following Turner's brief detention, Officer Bruce issued her a citation for violation of Madison Municipal Ordinance § 5.06(2) for resisting/obstructing a police officer, but MPD later asked that the citation be dismissed and it was. Defendants seek to preclude plaintiff from presenting any evidence, testimony or argument regarding the citation or the dismissal on the ground that such evidence is irrelevant to Turner's civil rights claims and would be prejudicial to defendants. On the other hand, plaintiff argues that the MPD or city attorney decision to dismiss the citation because of "burden of proof" issues is relevant to defendants' credibility, motivation and intent.

The court agrees with defendants that evidence relating to the citation should be excluded, unless defendants somehow open the door at trial. The principle problem with introducing this evidence is that plaintiff brought no claim for retaliation for issuance of the

citation. Therefore, introduction of the citation would largely be a sideshow and unfairly prejudicial to defendants regardless what their motivation might have been for issuing the citation the following day. Whether defendants, someone else at MPD or the city attorney decided to pursue a charge for resisting/obstructing against plaintiff is not determinative, or even particularly probative, of whether defendants had reasonable suspicion to detain her the previous day or used excessive force against her in doing so. Admittedly, the fact that defendants decided to issue the citation after having time to deliberate may be some evidence of their defensiveness or ill-will, but significant prejudice or confusion could arise if the jury retroactively seeks to gauge the reasonableness of defendants' decision to stop and briefly detain plaintiff against the knowledge that plaintiff was not prosecuted for resisting/obstructing an officer. This is especially true because the standard for Fourth Amendment liability is one of an objective officer and not based on the motivation of a particular defendant. Accordingly, this motion will be GRANTED as to the liability phase of trial and RESERVED for further argument at the Final Pretrial Conference as to possible relevance to damages.

**MIL No. 5: Preclude argument, testimony, or other evidence regarding information not known by the officers at the time of their interactions with plaintiff (dkt. #36)**

Defendants move to preclude argument, testimony or other evidence regarding any information not known by the officers at the time of their interactions with plaintiff, including in particular, that plaintiff was not the person who entered Wa Xiong's home and that plaintiff was actually attempting to visit a relative when Officer Bruce stopped her. Defendants argue that because the Fourth Amendment is an objective standard, only the information known and available to Officers Bruce and Morovic is relevant to whether they had reasonable suspicion to stop and detain plaintiff.

At best, defendants' motion is too sweeping in scope. In general, defendants are correct that information not known to them at the time of plaintiff's initial detention would be irrelevant to liability. *See Doornbos v. City of Chicago*, 868 F.3d 572, 579 (7th Cir. 2017) (question under Fourth Amendment is whether officer's conduct was "was objectively reasonable given the information he or she knew at the time"). Still, at least in some circumstances, information unknown to the officer at the time of the conduct may be admitted "if it tends to make one side's story more or less believable" *id.*, or if "its exclusion would leave a chronological and conceptual void in the story." *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012).

So far, however, plaintiff has not identified any specific information not known by defendants at the time of the detention that she believes should be admitted. The information about who plaintiff was visiting and whether she was the person who entered Wa Xiong's residence does not appear relevant to liability, unless defendants opened the door through cross-examination or otherwise by suggesting that plaintiff's disputed actions at the time she was stopped gave rise to reasonable suspicion. On the other hand, information not known to defendants would certainly become relevant during the damages phase of trial. Thus, the court will GRANT defendants' motion as to information not known to defendants at the time of plaintiff's initial detention, subject to plaintiff making a proffer regarding the relevance of specific evidence at the Final Pretrial Conference. However, the court will DENY the motion with respect to the damages phase of trial, subject to defendants identifying what evidence would have no bearing on plaintiff's pain and suffering or argument for punitive damages.

**MIL No. 6: Preclude argument, testimony or other evidence regarding defendants' promotion or disciplinary records (dkt. #37)**

Defendants move to preclude argument, testimony or other evidence regarding their employment or disciplinary records. Plaintiff does not oppose this motion, but does intend to introduce evidence relating to the complaint she filed with MPD about the incident. Defendants have not argued that evidence relating to plaintiff's complaint should be excluded. Therefore, the motion will be GRANTED, while reserving on whether plaintiff may introduce evidence relating to the complaint she filed with MPD until the Final Pretrial Conference.

**MIL No. 7: Preclude evidence or argument regarding other police incidents (dkt. #38)**

Defendants move to preclude plaintiff introducing evidence, argument or testimony regarding other unrelated police incidents in Madison or elsewhere. This motion will be GRANTED as unopposed.

**MIL No. 8: Preclude evidence regarding indemnification (dkt. #39)**

Defendants move to preclude plaintiff from presenting any evidence to the jury that the City of Madison has a statutory obligation to indemnify defendants. The court agrees this evidence is irrelevant. Neither side should make any reference to defendants' ability to pay damages or to what entity will ultimately pay damages. Of course, this will also preclude defendants from arguing an inability to pay or lack of financial resources, should the court allow a punitive damages claim to be asserted at trial. Accordingly, this motion will be GRANTED.

**MIL No. 9: Prohibit "golden rule" testimony and arguments (dkt. #40)**

This motion will be GRANTED as unopposed.

ORDER

IT IS ORDERED that:

1. Plaintiff's omnibus motion in limine (dkt. #25) is GRANTED IN PART and RESERVED IN PART as set forth above.

2. Defendants' motions in limine ##1 and 2 to preclude use of force verdict questions and evidence (dkt. #31) and for qualified immunity (dkt. #32), are DENIED as to defendant Bruce and RESERVED as to defendant Morovic as set forth above.

3. Defendants' motion in limine #3 to exclude damages evidence requiring expert testimony (dkt. #33) is GRANTED as set forth above.

4. Defendants' motion in limine #4 to preclude evidence of plaintiff's citation and its dismissal (dkt. #35) is GRANTED as to the liability phase and RESERVED as to the damages phase as set forth above.

5. Defendants' motion in limine #5 to limit evidence and testimony to information actually known by defendants (dkt. #36) is GRANTED IN PART and DENIED IN PART as set forth above.

6. Defendants' motion in limine #6 to exclude evidence regarding defendants' disciplinary or promotional history (dkt. #37) is GRANTED.

7. Defendants' motion in limine #7 to exclude evidence regarding other unrelated police incidents (dkt. #38) is GRANTED.

8. Defendants' motion in limine #8 to exclude evidence of indemnification (dkt. #39) is GRANTED.

9. Defendants' motion in limine #9 to exclude "golden rule" testimony and arguments (dkt. #40) is GRANTED.

Entered this 22nd day of January, 2019.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge